Richard C. Conway - #81679
Ian I. Brady - #331259
KAHN, SOARES & CONWAY, LLP
219 North Douty Street
Hanford, California 93230
Telephone: (559) 584-3337
Facsimile: (559) 584-3348

Attorneys for: Plaintiff, Randy Tyndall

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| RANDY TYNDALL,  an individual | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| SPROUTS FARMERS MARKET, INC., a Delaware corporation; and ECOSOUL HOME INC., a Delaware corporation | |
| Defendants. | |

Plaintiff, RANDY TYNDALL, an individual ("**Plaintiff**"), on behalf of himself and those similarly situated, based upon information, belief, and investigation by himself and his counsel, except for information based on personal knowledge, hereby alleges:

## INTRODUCTION

1.      Defendant Sprouts Farmers Market, Inc., a Delaware corporation ("**Sprouts**") and ECOSOUL HOME INC., a Delaware corporation ("**EcoSoul**"), (collectively, "**Defendants**"), advertise, market, and sell disposable single-use tableware such as plates, bowls, cold beverage cups, and hot beverage cups with lids, beverage straws, and cutlery sets, all under the Sprouts brand name (collectively, the "**Products**") which are marketed on their packaging as compostable.

A compostable product is one which is capable of being broken down into non-toxic elements (compost) which are beneficial to the soil.

2.      Many consumers concerned with environmental problems associated with the proliferation of trash and waste actively seek to purchase products that are compostable so such products can be introduced into the soil, rather than deposited in landfills. These consumers are willing to pay more for such products, which often cost significantly more than non-compostable disposable bags, plates, and bowls.

3.      The purpose of this Complaint is to remedy Defendants' unlawful, unfair, and deceptive business practices with respect to the advertising, marketing, labeling, and sale, both presently and in the future, of the Products as compostable, when in fact they are not.

4.      Plaintiff purchased several items of the Products from one of Sprout's stores, and did so in reliance on Defendants' false representations that the Products were compostable. Specifically, Plaintiff purchased a package of twenty 6" round plates, a package of twenty 9" round plates, a package of twenty 12-oz. bowls, a package of 100 straws, a package of a 36-count cutlery set, a package of twenty 16-oz cold beverage cups, and a package of twenty 16-oz hot beverage cups with lids.

5.      Plaintiff viewed Defendants' false representations on the labels and packaging of these aforementioned Products, and the representations of the Products' alleged compostability was a determining factor in Plaintiff's decision to purchase each of the foregoing Products. Plaintiff relied upon the apparent truthfulness of these representations as to the Products' compostability, leading to the injuries and damages suffered by Plaintiff as further described herein. If Plaintiff had known that the Products were not actually compostable as claimed by Defendants, Plaintiff would not have purchased the Products and/or would not have paid the premium price for compostable products. Defendants have thus breached their express warranties under the California Commercial Code § 2313; violated the California Consumers Legal Remedies Act ("**CLRA**") by making representations that the Products have characteristics, benefits, and qualities which they do not have, and subsequently advertising the Products while claiming that

**CLASS ACTION COMPLAINT**

they did in fact have those characteristics, benefits, and qualities; and violated the Business and Professions Code § 17200 based on fraudulent, unlawful, and unfair acts and practices.

6.      Plaintiff and the Class seek an order enjoining Defendants' ongoing acts of unfair competition and other unlawful conduct, an award of damages to compensate them for Defendant's acts of unfair competition, false and misleading advertising, and breaches of warranty, and restitution to the individual victims of Defendants' fraudulent, unlawful, and unfair acts and practices.

## **PARTIES**

7.      Plaintiff RANDY TYNDALL, is a resident of the State of California at the time of the events alleged herein. Plaintiff is therefore a citizen of the State of California for diversity jurisdiction purposes.

8.      When given the choice, Plaintiff buys products that are compostable, recyclable, or reusable so that he can minimize his impact on the environment. Plaintiff purchased the Products during 2024 from a Sprouts Farmer's Market store in Visalia, California. Plaintiff purchased the Products because he believed that they would be an environmentally-friendly alternative to plastic products which are not compostable. Plaintiff specifically selected the Products for purchase in reliance on Defendants' representations that the Products are compostable. These false representations are located on the labels of the Products and in other marketing materials for the Products promulgated by Defendants online and in print media. Had Plaintiff known that the Products contained PFAS chemicals, and thus could not break down into compostable material, he would not have purchased the Products. As a result, Plaintiff paid considerably more for the Products than he would have for similar products which are not and do not claim to be compostable.

9.      Defendant Sprouts is a Delaware limited liability company with its principal office located in Phoenix, Arizona. Sprouts is therefore a citizen of the states of Delaware and Arizona. Sprouts distributes and/or sells the Products in California via its Sprouts-branded grocery stores.

**CLASS ACTION COMPLAINT**

By so distributing and/or selling the Products in California, Sprouts has submitted to the jurisdiction of California's courts for purposes of diversity jurisdiction.

10.     Defendant EcoSoul is a Delaware corporation with its principal place of business in the State of Washington. EcoSoul is therefore a citizen of the states of Delaware and Washington. EcoSoul manufactures the Products at issue in this complaint for eventual sale in the State of California. By so manufacturing the Products for sale in California, EcoSoul has submitted to the jurisdiction of California's courts for purposes of diversity jurisdiction.

## JURISDICTION AND VENUE

11.     There is complete diversity of citizenship between all Plaintiffs and all Defendants in this case. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) over Defendants because both Defendants are citizens of different states other than California, which is the state of Plaintiff's citizenship.

12.     This Court has personal jurisdiction over the Defendants. Defendants are foreign business entities that nonetheless have sufficient minimum contacts with California, and have intentionally availed themselves of the California consumer market either through the distribution, sale, or marketing of the Products within the State of California, or by having facilities located within California so as to render the exercise of jurisdiction over them by California courts consistent with traditional notions of fair play and substantial justice. Per Sprout's most recent 10-K filing with the US Securities and Exchange Commission dated February 22, 2024, the most recent such filing preceding the filing of this complaint, Sprouts reported that it had 139 stores located within the State of California. An excerpt from the aforementioned 10-K filing confirming this figure is attached hereto and incorporated herein as **Exhibit A**. Plaintiff therefore asserts that such contacts are sufficiently numerous to subject Defendants to this Court's personal jurisdiction.

13.     The amount in controversy in this action exceeds the jurisdictional minimum of this Court of $75,000. Defendant Sprouts categorizes its products as either perishable or non-perishable. The Products would be considered non-perishable items. Per Sprouts' most recent Form 10-Q filing with the US Securities and Exchange Commission dated October 30, 2024, the

4

**CLASS ACTION COMPLAINT**

most recent such filing preceding the filing of this complaint, Sprouts reported net sales of non-perishable products from the first week of 2024 through September 29, 2024, as amounting to $2,434,086 million, as indicated in the excerpt from the Form 10-Q attached hereto and incorporated herein as **Exhibit B**. Plaintiff therefore asserts that, given the sheer volume of sales of non-perishable products publicly reported by Sprouts in the product category comprising those under which the Products were sold, amounts in excess of $75,000 worth of sales of the offending Products themselves were sold in 2024 to California residents in violation of the CLRA and Business & Professions Code § 17200 as alleged in this Complaint.

14.     Venue in this Court is proper pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim herein described occurred in this District.

15.     **Intradistrict Assignment (L.R. 120(d)):** This action arises in Tulare County, in that a substantial part of the events which give rise to the claims asserted herein occurred in Tulare County. Pursuant to L.R. 120, all civil actions which arise in Tulare County shall be assigned to the Fresno Division.

## BACKGROUND FACTS

16.     Due to the amount of landfilled waste accumulating in the environment, biodegradable and compostable foodware options have become increasingly popular. As consumers look to invest in sustainable alternatives to single-use plastics and packaging, some, including Plaintiff, actively seek out products that are compostable, recyclable, or reusable to prevent the increase in global waste and to minimize their environmental footprints.

17.     The California Business and Professions Code § 17580.5 makes it "unlawful for any person to make any untruthful, deceptive, or misleading environmental marketing claim, whether explicit or implied." Pursuant to that section, the term "environmental marketing claim" includes any claim contained in the Guides for use of Environmental Marketing Claims published by the Federal Trade Commission (the "**Green Guides**"). *Ibid; see also* 16 C.F.R. § 260.1, *et seq.* Under the Green Guides, "[i]t is deceptive to misrepresent, directly or by implication, that a

**CLASS ACTION COMPLAINT**

product or package is compostable." 16 C.F.R. 260.7(a). "A marketer claiming that an item is compostable should have competent and reliable scientific evidence that all the materials in the item will break down into, or otherwise become part of, usable compost…in a safe and timely manner...in an appropriate composting facility..." 16 C.F.R. §260.7(b).

18.     The Green Guides' definition of "compostable" is consistent with reasonable consumer expectations that compost is comprised largely of "decayed organic matter" that "is used for fertilizing and conditioning land."[1] Accordingly, reasonable consumers expect that products advertised, marketed, sold, labeled, and/or represented as compostable will be converted into usable organic matter that decomposes into fertilizer to condition the land, and that such products will not introduce toxic chemicals into the fertilizer or land.

19.     The Green Guides specifically prohibit marketers from labeling products as compostable if those products release toxins into the compost as they break down, noting that "a claim is deceptive if the presence...toxins prevents the compost from being usable" 16 C.F.R. §260.7(d).

20.     California has passed its own state-level standards regarding the use of environmental marketing claims such as the labeling of products as being "compostable". Specifically under current law, a consumer product can only be considered compostable if it "Does not have a total organic fluorine concentration of greater than 100 parts per million" per California Public Resources Code § 42357(g)(1)(A). Thus, if a consumer product has a total organic fluorine concentration level in excess of 100 parts per million, then it would be misleading to label such product as being compostable.

## FACTS REGARDING DEFENDANTS' PRODUCTS CONTAINING PFAS

21.     Defendants advertise, market, and sell their Products under the Sprouts label as being compostable. However, the Products contain significant amounts of perfluoroalkyl and polyfluoroalkyl substances ("**PFAS**"), which do not break down and never become part of usable

---

[1] Merriam-Webster Dictionary (2024); accessible at:
https://www.merriam-webster.com/dictionary/compost; last accessed on: December 19, 2024.

**CLASS ACTION COMPLAINT**

compost. PFAS are highly persistent synthetic fluorinated chemicals which have been associated with a variety of negative health effects such as cancer, developmental toxicity, immunotoxicity among others.[2]

22.     PFAS are known as "forever chemicals" because they do not break down over time. When PFAS are introduced into the environment, they seep into and contaminate both land and water and then never leave it. PFAS introduced into soil contaminates crops grown in that soil and the meat from farm animals that graze there. Compost is used as soil-conditioning material or fertilizer, so when compost is itself contaminated with PFAS, the PFAS then contaminate the soil treated or fertilized with that compost and whatever grows or grazes on that soil.

23.     PFAS' characteristic carbon-fluorine bonds make them extremely resistant to degradation, even at high temperatures. The strength of the bond between carbon and fluorine means that these chemicals do not degrade in the environment. Due to the highly persistent nature of these chemicals, they break down, very slowly, if at all.[3]

24.     Because PFAS do not naturally break down like compostable materials, they accumulate in air, soil, water, and in the human body.

25.     PFAS have grease and water-resistant properties, which means they are often added to paper plates, bowls, food storage, and packaging products (together, "**Foodware**"). This leads to increased PFAS exposure in humans and in the environment. For products containing PFAS which are sold as compostable, there is the added concern that PFAS will seep into the ground and soil, contaminating otherwise-usable compost streams.

26.     Foodware containing PFAS can contaminate food items they come into contact with. Worse yet, for contaminated Foodware products that are compostable, PFAS can leach from noncompostable products which are placed into the compost stream, contaminating the compost itself and the organic matter grown using that composted material. For this reason, and for their

---

[2] Schaider, L., et al., "Fluorinated Compounds in U.S. Fast Food Packaging" Environ Sci Technol Lett. 2017; 4(3): 105–111. doi:10.1021/acs.estlett.6b00435, (August 22, 2018), accessible at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6104644/pdf/nihms983267.pdf, last accessed on December 19, 2024.
[3] National Institute of Environmental Health Sciences, accessible at: https://www.niehs.nih.gov/health/topics/agents/pfc, last accessed on December 19, 2024.

7

environmental persistence, "PFASs should be considered incompatible with compostable food packaging."[4]

27.     Humans are exposed to PFAS by consuming PFAS-contaminated water and food, as well as through the use of products that contain PFAS. Such exposure can lead to effects on the immune system, cancer, and thyroid hormone disruption.

28.     Compostable and biodegradable Foodware options have become increasingly popular with consumers as a means to eliminate waste and divert usable products from landfills. For products that claim to be compostable and/or biodegradable, private certification companies have arisen in the last two decades to provide certification of such claims.

**DEFENDANTS' CLAIMS REGARDING THEIR PRODUCTS' COMPOSTABILITY**

29.     In California, consumer products cannot be labeled as "compostable" if they have a total organic fluorine concentration of greater than 100 parts per million (CA Public Resources Code § 42357(g)(1)(C)). The Sprouts-branded Products at issue in this complaint bear a compostability certification from a private organization, the Biodegradable Products Institute ("**BPI**"), on their packaging. The presence of such a certification presumably confirms to consumers that the Products are in fact compostable, or else they would not be certified by BPI as such.

30.     Notwithstanding this certification, Plaintiff has caused the Products sold by Sprouts and manufactured by EcoSoul to be independently tested by a third-party laboratory to ascertain the presence and amount of PFAS within them.

31.     The test results indicate the presence of significant amounts of PFAS within the bowls, plates, straws, and cutlery that Plaintiff purchased, in direct contradiction of Defendants' claims that their Products are compostable. Defendants' claims that the Products are compostable are uniform, consistent, and material claims. Because the claims are false and misleading, many ordinary, reasonable consumers, including members of the class as defined hereinafter, are likely

---

[4] Schaider, L., et al., "Fluorinated Compounds in U.S. Fast Food Packaging" Environ Sci Technol Lett. 2017; 4(3): 105–111. doi:10.1021/acs.estlett.6b00435, (August 22, 2018), accessible at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6104644/pdf/nihms983267.pdf, last accessed on December 19, 2024 at p. 8.

**CLASS ACTION COMPLAINT**

to be deceived by such representations if they rely on them as a factor in deciding to purchase any of the Products, like Plaintiff did here.

32.     By encouraging consumers to dispose of the Products in compost collection bins on the basis that the Products are allegedly compostable, Defendants are contaminating entire compost streams with PFAS materials that will not break down over time. The Products are then mixed with composted and compostable materials in an industrial composting facility and turned into soil fertilizer for crops and other foods. However, the PFAS will remain uncomposted, thus contaminating the crops grown in that soil. Environmentally motivated consumers who purchase the Products in the belief that such products are compostable are thus unwittingly hindering sustainable composing efforts.

33.     A reasonable, ordinary consumer would be expected to assume that if a Foodware product which is alleged to be compostable is accepted into an industrial composing program, then that Foodware product is in fact compostable. Defendants' representations that their Products are compostable are therefore likely to deceive ordinary consumers because the Products are not, in fact, compostable as they are held out to be.

34.     The Green Guides are clear: "[a] marketer claiming that an item is compostable should have competent and reliable scientific evidence that all the materials in the item will break down into, or otherwise become part of, usable compost (e.g., soil-conditioning materials, mulch) in a safe and timely manner (i.e., in approximately the same time as the materials with which it is composted) in an appropriate composing facility, or in a home compost pile or device." 16 C.F.R. §260.7(b). California has adopted similar standards: "A manufacturer or supplier, upon the request of a member of the public, shall submit to that member, within 90 days of the request, information and documentation demonstrating compliance with this chapter, in a format that is easy to understand and scientifically accurate." Cal Pub Resources Code § 42357(d). Plaintiff is also informed and believes and thereon asserts that other states in which the Products are sold – including but not limited to Washington and Colorado – have adopted similar limitations on

9

**CLASS ACTION COMPLAINT**

permissible levels of PFAS in consumer Foodware products, and that Defendants' Products sold in those states are in violation of those limitations.

35.　　Here, the bowls, plates, straws, and cutlery manufactured and sold by Defendants are not compostable under applicable California law because they are made with substantial levels of PFAS, which cannot break down over time, or break down into usable compost.

36.　　Defendants' marketing of these Products as compostable is thus a direct violation of the Green Guides and the California Public Resources Code. Because the Products are not compostable, Defendants' representations are thus per se deceptive under the Green Guides and under California law. Because the Products are not compostable, Defendant cannot make any truthful compostable claims as to the Products.

## DEFENDANTS' LABELING DEFICIENCIES

37.　　California Public Resources Code § 42357(g)(1)(D) requires that product sold in the State of California that is labeled "compostable" be labeled "in a manner that distinguishes the product from a noncompostable product upon reasonable inspection by consumers and to help enable efficient processing by solid waste processing facilities."

38.　　A "product" is defined by California Public Resources Code § 42356(g)(4) as encompassing "A food or beverage container or a container component, including, but not limited to, a straw, lid, or utensil". This necessarily includes the Sprouts-branded straws, cutlery, cold cups, hot cups, and the hot cups' lids manufactured by EcoSoul and sold by Sprouts.

39.　　The plain language of California Public Resources Code § 42356(g)(4) requires that food containers and the containers' components such as straws, lids, or utensils be themselves labeled as compostable.

40.　　None of the aforementioned Sprouts-branded straws, cutlery, cold cups, hot cups, or hot cup lids contain any labeling on any of the actual items or utensils themselves stating that they are compostable. The only such labeling claiming that the aforementioned products are compostable is found on the products' packaging, however, this alone is insufficient to comply with the express terms of Public Resources Code § 42356(g)(4).

10

**CLASS ACTION COMPLAINT**

41.     Defendants' marketing and sale of these particular products as compostable is not in compliance with the Public Resources Code sections requiring that food container components themselves be themselves labeled as compostable. Because the straws, cutlery, cold cups, hot cups, and hot cup lids are not properly labeled as compostable as required by applicable law, Defendants' sale, marketing, and distribution of such products is improper and Defendants cannot make any truthful compostable claims as to the improperly labeled Sprouts-branded products. Until such time as the offending products are able to be manufactured by defendant EcoSoul to be in compliance with the labeling requirement of Public Resources Code § 42356(g)(4), defendant Sprouts must be required to remove such products from its stores.

## CLASS ACTION ALLEGATIONS

42.     Plaintiff brings this suit individually and as a class action pursuant to Federal Rule of Civil Procedure Rule 23, on behalf of himself and the following class of similarly situated individuals:

> All persons who purchased the Products for personal, family or household purposes in California (either directly or through an agent) during the applicable statute of limitations period (the "**Class**"). Specifically excluded from the Class are Defendants; the officers, directors or employees of Defendants; any entity in which Defendants have a controlling interest; and any affiliate, legal representative, heir or assign of Defendants. Also excluded are any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

43.     Plaintiff is unable to state the precise number of potential members of the proposed Class because that information is determinable only by review of Defendants' business records relating to the sale of the Products to the potential Class members, and such information is in the exclusive possession of Defendants. However, the number of Class members is so numerous that joinder would be impracticable for purposes of Rule 23(a)(1). The exact size of the proposed Class and the identity of its members will be readily ascertainable from the business records of Defendants and Defendants' retailers as well as Class members' own records and evidence. The disposition of the claims of the members of the Class in this action will substantially benefit both

**CLASS ACTION COMPLAINT**

the parties and the Court. As stated previously, Defendant Sprouts indicated in its most recent 10-K filing that it had 139 stores in the State of California which consumers can patronize. In light of this, Plaintiff is therefore informed and believes that the number of Class members is in excess of 100,000 persons.

44.     There is a community of interest among the members of the proposed Class in that there are questions of law and fact common to the proposed Class for purposes of Rule 23(a)(2), including whether Defendants' labels, advertisements, and packing include uniform misrepresentations that misled Plaintiff and the other members of the Class to believe that the Products are compostable when they are not. Proof of a common set of facts will establish the liability of Defendants and the right of each member of the Class to relief.

45.     Plaintiff asserts claims that are typical of the claims of the entire class, for purposes of Rule 23(a)(3). Plaintiff and all members of the Class have been subjected to the same wrongful conduct because they have purchased the Products that are labeled and sold as plates, bowls, and other Foodware items that are claimed by Defendants to be compostable, when they are not in fact compostable.

46.     Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class for purposes of Rule 23(a)(4). Plaintiff has no interests antagonistic to those of the other members of the Class. Plaintiff is committed to the vigorous prosecution of this action. Plaintiff anticipates no difficulty in the management of this litigation as a class action.

47.     Class certification is appropriate under Rule 23(b)(2) because Defendants have acted on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief, is appropriate respecting the Class as a whole. Defendants utilized labeling and advertising concerning the Products that include uniform misrepresentations that misled both Plaintiff and the other members of the Class.

48.     Class certification is appropriate under Rule 23(b)(3) because common questions of law and fact substantially predominate over any questions that my affect only individual members of the Class. These common legal and factual questions, which do not vary among Class

**CLASS ACTION COMPLAINT**

members and which may be determined without reference to the individual circumstances of any Class member include, but are not limited to the following:

a. Whether Defendants advertise and market the Products by representing that the Products are compostable;

b. Whether the Products contain PFAS in excess of allowable limits prescribed by the State of California;

c. If the Products contain PFAS, whether Defendants sold the Products with the knowledge that the Products contained PFAS;

d. Whether the Products are in fact compostable as advertised and labeled by Defendants;

e. Whether Defendants' marketing, advertising, and labeling claims regarding the compostability of the Products are likely to deceive a reasonable consumer;

f. Whether Defendants' representations regarding the compostability of the Products are likely to be read and understood by a reasonable consumer;

g. Whether Defendants' representations regarding the compostability of the Products are in compliance with the Green Guides and the California Public Resources Code;

h. Whether Defendants' claims regarding the compostability of the Products would be material to a reasonable consumer of the Products;

i. Whether Defendants' conduct in advertising, marketing, and labeling of the Products constitutes a violation of California consumer protection laws;

j. Whether Defendants' representations concerning the Products constitute express warranties with regard to the Products;

k. Whether Defendants breached the express warranties they made with regard to the Products;

l. Whether Defendants' representations regarding compostability constitute representations that the Products have characteristics, benefits, or qualities which they do not have;

**CLASS ACTION COMPLAINT**

m.      Whether Defendants advertised their Products without an intent to sell them as so advertised;

n.      Whether Defendants have been unjustly enriched from the sale of the Products;

o.      Whether punitive damages are warranted for Defendants' conduct, and if so, an appropriate amount of such damages; and

p.      Whether Plaintiff and the Class members are entitled to injunctive, equitable, and monetary relief.

49.      Defendants utilize marketing, advertisements, and labeling that includes uniform misrepresentations that misled Plaintiff and the other members of the Class. Defendants' claims regarding the compostability of the Products are one of the most prominent features of Defendants' marketing, advertising, and labeling of the Products. Nonetheless, the Products are not in fact compostable. Thus, there is a well-defined community of interest in the questions of law and fact involved in this action and affecting the parties.

50.      Proceeding as a class action provides substantial benefits to both the parties and the Court because this is the most efficient method for the fair and efficient adjudication of the controversy. Class members have suffered and will suffer irreparable harm and damages as a result of Defendants' wrongful conduct. Because of the nature of the individual Class members' claims, few, if any, could or would otherwise afford to seek legal redress against Defendants for the wrongs complained of herein, and a representative class action is therefore appropriate, the superior method of proceeding, and essential to the interests of justice insofar as the resolution of Class members' claims are concerned. Absent a representative class action, members of the Class would continue to suffer losses for which they would have no remedy, and Defendants would unjustly retain the proceeds of its ill-gotten gains. Even if separate actions could be brought by individual members of the Class, the resulting multiplicity of lawsuits would cause undue hardship, burden, and expense for the Court and the litigants, as well as create the risk of inconsistent rulings which

14

**CLASS ACTION COMPLAINT**

might be dispositive of the interests of the other members of the Class who are not parties to the adjudications or may substantially impede their ability to protect their interests.

### FIRST CAUSE OF ACTION

**(Plaintiff, on Behalf of Himself, the Class, and the General Public, Alleges Violations of CA Business & Professions Code § 17200, *et seq.* Based on Commission of Unlawful Acts)**

51.     Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 50 of this Complaint.

52.     The violation of any law constitutes an unlawful business practice under Business & Professions Code §17200.

53.     Defendants' conduct violates CA Business & Professions Code § 17580.5, which makes it unlawful for any person to make any untruthful, deceptive, or misleading environmental marketing claim. Pursuant to §17580.5, the term "environmental marketing claim" includes any claim contained in the Green Guides. 16 C.F.R. §260.1, *et seq.* Under the Green Guides, "[i]t is deceptive to misrepresent, directly or by implication, that a product or package is compostable. A marketer claiming that an item is compostable should have competent and reliable scientific evidence that all the materials in the item will break down into, or otherwise become part of, usable compost (e.g., soil-conditioning material, mulch) in a safe and timely manner (i.e., in approximately the same time as the materials with which it is composted) in an appropriate composting facility, or in a home compost pile or device. A marketer should clearly and prominently qualify compostable claims to the extent necessary to avoid deception if: (1) the item cannot be composted safely or in a timely manner in a home compost pile or device; or (2) the claim misleads reasonable consumers about the environmental benefit provided when the item is disposed of in a landfill." 16 C.F.R. § 260(a)-(c). Furthermore, California Public Resources Code § 42357(g)(1)(C) forbids the labeling of a consumer product as being "compostable" if it contains a total organic fluorine concentration of greater than 100 parts per million. Plaintiff has had the Products tested for the presence of PFAS in them by an independent laboratory and has confirmed that many of the Products contain PFAS chemicals in excess of permissible standards. By nonetheless representing that the Products are compostable and have been certified as compostable

**CLASS ACTION COMPLAINT**

by a third party compostable certification authority like BPI as described above at the time Plaintiff purchased the Products, Defendants are violating Business and Professions Code § 17580.5.

54. As detailed more fully in the paragraphs below, the acts and practices alleged herein were intended to or did result in the sale of the Products in violation of the CLRA, California Civil Code §1750, *et seq.*, and specifically California Civil Code § 1770(a)(5), (a)(7) and (a)(9).

55. Defendants' conduct also violates Section 5 of the Federal Trade Commission Act ("**FTC ACT**"), 15 U.S.C. § 45, which prohibits unfair methods of competition and unfair or deceptive acts or practices in or affecting commerce. By misrepresenting that the Products are compostable, Defendants are violating Section 5 of the FTC Act.

56. Defendants' conduct also violated California Business & Professions Code § 17500, which prohibits knowingly making, by means of any advertising device or otherwise, any untrue or misleading statement with the intent to sell a product or to induce the public to purchase a product. By misrepresenting that the Products are compostable, Defendants are violating Business & Professions Code § 17500.

57. For the bowl and plate Products which Plaintiff purchased, those contain a statement on the face of the packaging stating that they are "PFAS Free" as well as having a circular stamp on them stating that they are plant-based and compostable. On the underside of the package is printed the BPI label allegedly certifying that the Products are commercially compostable. These statements are unquestionably representations and warranties of matters of ascertainable fact.

58. Defendants' representations on their packaging that the Products are compostable constitute affirmations of fact made with regard to the Products, as well as descriptions of the Products, that are part of the basis of the bargain between Defendants and purchasers of the Products. Because those representations are material, false, and misleading, and because Plaintiff and members of the Class have relied upon the perceived truthfulness of those representations to their detriment, Defendants have breached their express warranties as to the Products and have violated California Commercial Code § 2313.

**CLASS ACTION COMPLAINT**

59.     Defendants' conduct is also a breach of California Public Resources Code § 42357(g)(1)(D). Certain of Defendants' Products which are required to have certain labeling features on the products themselves signifying that they were compostable were sold without those required labeling features printed on them. By selling certain of the Products without the labeling features as required by statute, Defendants are violating Public Resources Code § 42357(g)(1)(D).

60.     By violating the CLRA, the FTC Act, Business & Professions Code §§ 17500 and 17580.5, California Commercial Code § 2313, and California Public Resources Code §42357, Defendants have engaged in unlawful business acts and practices which constitute unfair competition within the meaning of Business & Professions Code § 17200. Plaintiff would not have purchased the Products, or would not have paid as much for Products, but for Defendants' unlawful business practices. Plaintiff has thus suffered injury in fact and lost money or property as a direct result of Defendants' misrepresentations and material omissions.

61.     An action for injunctive relief and restitution is specifically authorized under Business & Professions Code § 17203. Plaintiff has standing to demand injunctive relief because Plaintiff, and by extension, the Class, have suffered a concrete and ongoing injury: an inability to rely, now or in the future, upon the validity of the information advertised on Defendants' Products, rendering Plaintiff, the Class, and average consumers unable to rely on the Products' representation of being "compostable" without any degree of confidence in the truthfulness of such representations. Plaintiff continues to desire to purchase truly compostable Foodware products in the future, including those Products manufactured and sold by Defendants. Plaintiff continues to patronize Sprouts stores where Sprouts-branded Foodware Products are sold with packaging claiming that such Products are compostable. However, Plaintiff has no way of determining whether the Products' representations as being "PFAS free" and "compostable" are in fact true. Injunctive relief would provide redress for this ongoing injury by requiring that both at present and in the future, Defendants only make truthful representations as to the compostability of the Products upon which a reasonable consumer could rely now and hereafter.

**CLASS ACTION COMPLAINT**

**SECOND CAUSE OF ACTION**

**(Plaintiff, on Behalf of Himself, the Class, and the General Public, Alleges Violations of California Business & Professions Code § 17200, *et seq.* Based on Fraudulent Acts and Practices)**

62.     Plaintiff realleges and incorporated herein by reference Paragraphs 1 through 61 of this Complaint.

63.     Under Business & Professions Code § 17200, any business act or practice that is likely to deceive members of the public constitutes a fraudulent business act or practice.

64.     Defendants have engaged in and continue to engage in conduct that is likely to deceive members of the public. This conduct includes but is not limited to, representing that the Products are compostable; representing that the products have been certified as compostable by an independent third-party certification organization such as BPI; and selling certain of the Products in violation of California Public Resources Code § 42357(g)(1)(D) by failing to properly label them in accordance with applicable law.

65.     Plaintiff purchased the Products in reliance on Defendants' representations that the Products are compostable. Defendants' claims that the Products are compostable are material, untrue, and misleading. These compostable claims are prominent on all of Defendants' marketing, advertising, and labeling materials on the Products' packaging, even though Defendants are aware that the claims are false and misleading. Also, because Defendants' compostable claims violate Business & Professions Code §17580.5, such claims are deceptive *per se*. Defendants' claims are thus likely to deceive both Plaintiff and a reasonable consumer. Plaintiff would not have purchased the Products, or would not have paid as much for the Products, but for Defendants' false representations that the Products are compostable. Plaintiff has thus suffered injury in fact and lost money or property as a direct result of Defendants' misrepresentations and material omissions.

66.     By committing the acts alleged above, Defendants have engaged in fraudulent business acts and practices, which constitute unfair competition within the meaning of Business & Professions Code §17203.

**CLASS ACTION COMPLAINT**

### THIRD CAUSE OF ACTION

**(Plaintiff, on Behalf of Himself, the Class, and the General Public, Alleges Violations of California Business & Professions Code § 17200, *et seq.* Based on Unfair Acts and Practices)**

67.     Plaintiff realleges and incorporated herein by reference Paragraphs 1 through 66 of this Complaint.

68.     Under Business & Professions Code § 17200, any business act or practice that is unethical, oppressive, unscrupulous, or substantially injurious to consumers, or that violated a legislatively declared policy, constitutes an unfair business act to practice.

69.     Defendants have engaged in and continue to engage in conduct which is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers. This conduct includes but is not limited to, advertising and marketing the Products as compostable and having labeling on the Products' packaging stating that the Products are compostable when they are not actually compostable. By taking advantage of consumers concerned about the environmental impact of non-sustainable wase, Defendants' conduct, as described herein, far outweighs the utility, if any, of such conduct.

70.     Defendants have engaged in and continue to engage in conduct that violates the legislatively declared policy of the CLRA against misrepresenting the characteristics, uses, benefits, and quality of goods for sale by representing to consumers that the Products are compostable when they are not in fact compostable as advertised.

71.     Defendants' conduct violated California Public Resources Code § 42357(g)(1)(C) by selling or offering for sale a product in the State of California labeled with the term "compostable" which such product has a total organic fluorine concentration of greater than 100 parts per million.

72.     Defendants' conduct also violated the policy of the Green Guides. The Green Guides mandate that "it is deceptive to misrepresent, directly or by implication, that a product or package is compostable." 16 C.F.R. § 260.7(a). It further states that "[a] marketer claiming that an item is compostable should have competent and reliable scientific evidence that all the materials in the item will break down into, or otherwise become part of usable compost...in a safe and timely

manner." 16 C.F.R. § 260.7(b). As explained above, the Products are not compostable and the PFAS contained within the Products do not break down into usable compost over time, notwithstanding the Products' claims on their packaging to the contrary. Moreover, the PFAS contaminate the compost, thereby contaminating the soil treated with the compost.

73.     Defendants' conduct, including failing to disclose that the Products contain PFAS which cannot break down into usable compost, is substantially injurious to consumers. Such conduct has caused and continues to cause substantial injury to consumers because consumers would not have purchased the Products but for Defendants' representations that the Products are compostable. Consumers are concerned about environmental issues in general and PFAS contamination in particular. Defendants' representations are therefore material to such consumers. Misleading causes injury to such consumers that is not outweighed by any countervailing benefits to consumers or competition. Indeed, no benefit to consumers or competition results from Defendants' conduct. Defendants gain an unfair advantage over their competitors, whose advertising must comply with the CLRA, the FTC Act, Cal. Business & Professions Code § 17580.5, Cal. Public Resources Code, and the Green Guides. Since consumers reasonably rely on Defendants' representations of the Products, and injury results from the ordinary use of the Products, consumers could not have reasonably avoided such injury.

74.     Although Defendants know that the Products are not compostable, Defendants failed to disclose that fact to Plaintiff and to the Class.

75.     By committing the acts alleged above, Defendants have engaged in unfair business acts and practices which constitute unfair competition within the meaning of California Business & Professions Code § 17200.

76.     An action for injunctive relief and restitution is specifically authorized under Business & Professions Code § 17203. Plaintiff has standing to demand injunctive relief because Plaintiff, and by extension, the Class, have suffered a concrete and ongoing injury: an inability to rely, now or in the future, upon the validity of the information advertised on Defendants' Products, rendering Plaintiff, the Class, and average consumers unable to rely on the Products' representation

**CLASS ACTION COMPLAINT**

of being "compostable" without any degree of confidence in the truthfulness of such representations. Plaintiff continues to desire to purchase truly compostable Foodware products in the future, including those Products manufactured and sold by Defendants. Plaintiff continues to patronize Sprouts stores where Sprouts-branded Foodware Products are sold with packaging claiming that such Products are compostable. However, Plaintiff has no way of determining whether the Products' representations as being "PFAS free" and "compostable" are in fact true. Injunctive relief would provide redress for this ongoing injury by requiring that both at present and in the future, Defendants only make truthful representations as to the compostability of the Products upon which a reasonable consumer could rely now and hereafter.

77.    Plaintiff would not have purchased the Products, or would not have paid as much for the Products, but for Defendants' unfair business practices. Plaintiff has thus suffered injury in fact and lost money or property as a direct result of Defendants' misrepresentations and material omissions.

**FOURTH CAUSE OF ACTION**

**(Plaintiff, on Behalf of Himself and the Class, Alleges Violations of the California Consumers Legal Remedies Act – Injunctive Relief and Damages)**

78.    Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 77 of this Complaint.

79.    Plaintiff and the Class members purchased the Products for personal, family, or household purposes.

80.    The acts and practices of Defendants as described above were intended to deceive Plaintiff and the Class members as described herein and have resulted and will result in damages to Plaintiff and the Class members. These actions violated and continue to violate the CLRA in at least the following respects:

a.    In violation of Section 1770(a)(5) of the CLRA, Defendants' acts and practices constitute representations that the Products have characteristics, uses, or benefits which they do not, in fact, have;

**CLASS ACTION COMPLAINT**

b.      In violation of Section 1770(a)(7) of the CLRA, Defendants' acts and practices constitute representations that the Products are of a particular quality, which they are not; and

c.      In violation of Section 1770(a)(9) of the CLRA, Defendants' acts and practices constitute the advertisement of the Products without the intent to sell them as advertised.

81.    By reason of the foregoing, Plaintiff and the Class members have suffered damages.

82.    By committing the acts alleged above, Defendants violated the CLRA.

83.    In compliance with the provisions of California Civil Code § 1782, on November 1, 2024, and December 5, 2024, Plaintiff, through counsel, provided written notice to Defendants of his intention to seek damages under applicable California law, and requested that Defendants offer an appropriate consideration or other remedy to all affected consumers. As of the date of this second amended complaint, Defendants have not done so. Accordingly, Plaintiff seeks damages pursuant to California Civil Code §§ 1780(a)(1) and 1781(a).

84.    Pursuant to California Civil Code § 180(a)(2), Plaintiff and the Class members are entitled to an order enjoining the above-described wrongful acts and practices of Defendants, providing actual and punitive damages and restitution to Plaintiff and the Class members, and ordering the payment of costs and attorneys' fees and any other relief deemed appropriate and proper by the Court under California Civil Code § 1780.

## FIFTH CAUSE OF ACTION
### (Plaintiff, on Behalf of Himself and the Class, Alleges Breach of Express Warranty)

85.    Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 84 of this Complaint.

86.    The Uniform Commercial Code §2-313 provides that an affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the promise.

87.    As detailed above, Defendants marketed and sold the Products as compostable. Defendants' representations that the Products are compostable constitute affirmations of objective,

22

**CLASS ACTION COMPLAINT**

verifiable fact made with regard to the Products, as well as to the descriptions of the Products in their marketing and printed directly on the packaging of the Products. The packaging for the various Products has claims printed on it that the Products were "PFAS Free" and "Compostable" and were certified as compostable by BPI.

88.     Defendants' representations to consumers regarding the alleged compostability of the Products are uniformly made in the Products' advertising, internet websites, and other marketing materials, and on the Product' own labeling and packaging materials, and are thus part of the basis of the bargain between Defendants and purchasers of the Products concerning the compostability of the Products.

89.     California has codified and adopted the provisions of the Uniform Commercial Code governing express warranties (Cal. Com. Code § 2313).

90.     At the time that Defendants designed, manufactured, sold, and distributed the Products, Defendants knew that the Products were not in fact compostable.

91.     As set forth in the paragraphs above, the Products are not compostable and thus do not conform to Defendants' express representations that the Products are compostable. Defendants knew or should have known that reasonable consumers to whom such representations about the Products' compostability would be made to via Defendants' advertising and marketing efforts would rely upon the perceived truthfulness of such representations in deciding to purchase the Products. In making such representations knowing that such representations were not in fact true, Defendants have thus breached their express warranties concerning the claimed compostability of the Products.

92.     On November 1, 2024, Plaintiff sent a pre-suit demand letter to Defendants notifying Defendants that the Products were improperly labeled as being compostable, and including a lab report confirming the presence of excessive amounts of PFAS chemicals in Defendant's 9" plates. On December 5, 2024, Plaintiff sent a second pre-suit demand letter to Defendants notifying them that the Products were not in fact compostable as Defendants market, advertise, and otherwise claim the Products are, and notifying Defendants of Plaintiff's intent to

**CLASS ACTION COMPLAINT**

file a class action lawsuit to remedy the consumer products claims Defendants' misleading advertising have caused. Defendants therefore have actual and constructive knowledge that the Products are not compostable and were thus not sold as marketed and advertised, but were instead sold in violation of the express warranties provided to consumers as to the alleged compostability of the Products.

93.     As a direct and proximate result of Defendants' breach of express warranties, Plaintiff and Class members have suffered damages.

## SIXTH CAUSE OF ACTION
### (Plaintiff, on Behalf of Himself and the Class, Alleges Unjust Enrichment)

94.     Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 93 of this Complaint.

95.     Plaintiff and the Class members conferred monetary benefits on Defendants by purchasing the Products.

96.     Defendants have knowledge of such benefits.

97.     Defendants voluntarily accepted and retained the benefits conferred.

98.     Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff's and the Class members' purchases of the Products.

99.     Retention of that money under these circumstances is unjust and inequitable because Defendants falsely and misleadingly represented through their labeling, advertising, and marketing materials that the Products are compostable, when the Products are not in fact compostable.

100.     These misrepresentations and omissions caused injuries to Plaintiff and the Class members because they would not have purchased the Products, or would not have paid as much for the Products, had they known that the Products are not compostable, but instead, contaminate the compost stream.

24

**CLASS ACTION COMPLAINT**

101.    Because Defendants' retention of the non-gratuitous benefits conferred to them by Plaintiff and the Class members is unjust and inequitable, Defendants ought to pay restitution to Plaintiff and the Class members for their unjust enrichment.

102.    As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and the Class members are entitled to restitution or disgorgement of the beneficial enrichment retained by Defendant, in an amount to be proven at trial

<strong><u>PRAYER FOR RELIEF</u></strong>

WHEREFORE, Plaintiff prays for judgment and relief against Defendants as follows:

1.   That the Court declare this action a class action;

2.   That the Court preliminarily and permanently enjoin Defendants from conducting their business through the unlawful, unfair, or fraudulent business acts or practices, untrue and misleading advertising, and other violations of law described in this Complaint;

3.   That the Court order Defendants to cease and refrain from marketing and promotion of the Products that state or imply that the Products are compostable;

4.   That the Court order Defendants to implement whatever measures are necessary to remedy the unlawful, unfair, or fraudulent business acts or practices, untrue and misleading advertising, and other violations of law described in this Complaint;

5.   That the Court order Defendants to notify each and every Class member of the pendency of the claims in this action in order to give such individuals an opportunity to obtain restitution and damages from Defendants;

6.   That the Court order Defendants to pay restitution to restore all Class members all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, or untrue or misleading advertising, plus pre-and post-judgment interest thereon;

7.   That the Court order Defendants to disgorge all money wrongfully obtained and all revenues and profits derived by Defendants as a result of their acts or practices as alleged in this Complaint;

<strong>CLASS ACTION COMPLAINT</strong>

8.   That the Court award damages to Plaintiff and the Class to compensate them for the conduct alleged in this complaint;

9.   That the Court award punitive damages pursuant to California Civil Code § 1780(a)(4);

10. That the Court grant Plaintiff reasonable attorneys' fees and costs of suit pursuant to California Code of Civil Procedure § 1021.5, California Civil Code § 1780(e), the common fund doctrine, or any other appropriate legal theory; and

11. That the Court grant such other and further relief as may be just and proper.

### JURY DEMAND

Plaintiff hereby demands a trial by jury on all causes of action so triable.

Dated: January 8, 2025                         KAHN, SOARES & CONWAY, LLP


                                               By: _____/s/ Ian I. Brady_____
                                               Ian I. Brady, attorney for Plaintiff,
                                               Randy Tyndall, an individual

15061 – 25//Pleadings/Class Action Complaint 010825

26

**CLASS ACTION COMPLAINT**